**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **CHARLES SCHOELCH,** | ) |
| Plaintiff, | ) |
| vs. | ) No. 4:06CV1576-DJS |
| **EMMETT MITCHELL, et al.,** | ) |
| Defendant. | ) |

<u>**ORDER**</u>

Pursuant to 42 U.S.C. §§ 1983, 1986, 1988, and the Fourteenth Amendment of the Constitution, plaintiff Charles Schoelch, who at the time of the alleged events was an inmate at the St. Louis County Justice Center, brings this action against defendant Emmett Mitchell, who at the time of the alleged events was a correctional officer at the St. Louis County Justice Center, for allegedly opening plaintiff's cell to allow another inmate to assault plaintiff, and for failing to intervene to help plaintiff when the same inmate later assaulted plaintiff. Plaintiff also asserts claims against five other named employees of St. Louis County (Roy Mueller, John Szuba, Cheryl Stone, Kenneth Reed, and Michael Henderson), St. Louis County, and unnamed John and Jane Does, for the injuries he sustained. At the time of the alleged events, Mueller was the Director of the County Department of Justice Services, Stone was an inmate caseworker, Szuba was a jail

supervisor, Reed was an internal affairs officer, and Henderson was the Watch Commander of the St. Louis County Justice Center.

The matters now before the Court are defendant Mitchell's motion for summary judgment [Doc. #47], and defendants St. Louis County, Mueller, Szuna, Stone, Reed, Henderson, and John and Jane Does' motion for summary judgment [Doc. #55]. The matters have been fully briefed and are ready for disposition.[1]

**Standard of Review**

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and [will] give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

---

[1] Plaintiff concedes that Counts III and VI of plaintiff's complaint should be dismissed. See Docs. #74, 79. Accordingly, the Court will grant summary judgment with regard to Counts III and VI.

2

**Facts**

All matters set forth in a party's statement of uncontroverted material facts not specifically controverted by the opposing party are deemed admitted for the purpose of summary judgment. E.D.Mo. L.R. 7-4.01(E). With respect to each pending summary judgment motion, the facts have been viewed in the light most favorable to the non-movant. The following facts are established for the purpose of ruling on these motions.[2]

On July 27, 2004, plaintiff was arrested and detained at the St. Louis County Justice Center while awaiting trial on a felony stealing charge. Prior to October 27, 2004, and through November 12, 2004, defendant Mitchell was employed by St. Louis County as a corrections officer and was assigned to work in housing unit 6B. On October 27, 2004, and through November 12, 2004, plaintiff, as well as inmate Darren Lindsey, were assigned to housing unit 6B. Housing unit 6B is a direct housing unit, which means that inmates can walk freely throughout the housing unit, unless the unit is on "lock down" and the inmates are confined in their cells.

On the afternoon of October 27, 2004, water started to spill out of the second level of housing unit 6B, and cascaded onto

---

[2]Defendants claim that plaintiff did not follow Rule 36 of the Federal Rules of Civil Procedure with regard to the requests for admission propounded by them, and argue that certain facts should therefore be deemed admitted. The Court finds that it can resolve the instant motions without ruling on the parties' discovery issues, and, accordingly, will decline to do so.

the first floor.  The unit was placed on lock down while defendant Mitchell investigated the source of the water and, because of the water, defendant Mitchell revoked commissary privileges.  Plaintiff alleges that defendant Mitchell publicly accused plaintiff of causing the flood.  Upon hearing that commissary privileges were revoked, Lindsey asked defendant Mitchell to open plaintiff's cell so that Lindsey could hurt plaintiff.  Plaintiff's cell was not opened by Mitchell upon Lindsey's request.

Lindsey and several other inmates were let out of their cells to clean up the water.  These inmates went from cell to cell to get them cleaned.  Plaintiff asserts that while the other cells were being cleaned, Lindsey continued to pace in front of plaintiff's cell making threatening statements.  However, plaintiff did not use the intercom in his room to tell defendant Mitchell that Lindsey was walking back and forth and threatening plaintiff. About thirty minutes after Lindsey's request for defendant Mitchell to open plaintiff's cell, plaintiff's cell was opened by Mitchell.[3]

---

[3]Plaintiff's deposition on the matter states as follows:
> Q. You testified that inmate Lindsey said to Corrections Officer Mitchell essentially pop open his cell door so I can fuck him up?
> A. Right, [Lindsey] did say that. Did [Lindsey] say anything else after that?
> Q. Yes.
> A. [Lindsey] did.  He kept pacing back and forth from the cells as he cleaned them and as soon as [defendant Mitchell] opens the cell it's on.  In other words, I'm gonna fuck you up.  He kept pacing back and forth waiting just waiting for that cell to [open].

Doc. #80-11, Schoelch Depo., 19:19 to 20:4.  The Court notes that plaintiff's deposition testimony is supplemented by his later sworn

4

Plaintiff specifically admits that his cell was opened so that it could be cleaned, but contends that defendant Mitchell "also opened it for Lindsey in response to Lindsey's repeated requests that Mitchell open [plaintiff's] door."[4] Doc. #76, p. 3.; see Doc. #77, ¶6. Lindsey then entered plaintiff's cell, picked plaintiff up, walked plaintiff to the back of the cell, and began slamming plaintiff's body against the back wall. Another inmate intervened, and separated plaintiff and Lindsey. Plaintiff asserts that defendant Mitchell witnessed the attack, but does not dispute the fact that he did not tell defendant Mitchell that Lindsey had assaulted him. Plaintiff did not request medical treatment as a

---

affidavit, which includes the accusation that Lindsey "continued to request that Mitchell open the door to my cell to let him in." Doc. #76, p. 3 (emphasis added). Nevertheless, plaintiff does not dispute that approximately thirty minutes expired between Lindsey's requests for defendant Mitchell to open plaintiff's cell and defendant Mitchell opening plaintiff's cell. See Docs. #47-3, ¶8; #Doc. #77, ¶8.

[4]The Court notes that, although not directly stated as such in his affidavit, plaintiff's response to defendant Mitchell's statement of facts avers that defendant Mitchell opened plaintiff's cell in response to Lindsey's requests. This assertion contradicts plaintiff's earlier sworn statement that he did not know why his cell was opened:
> Q. Three other cells had been opened so they could be swabbed down; is that correct?
> A. Correct.
> Q. And your door ended up happened to be enabled so that you could open it up so it could be cleaned up?
> A. No, I didn't open it up. It just opened up automatically by remote control.
> Q. It was opened up for the purposes of swabbing out your room?
> A. I don't know why, I would assume, yeah.

Doc. 47-7, Sworn Testimony of Charles Schoelch, 46:11 to 46:21. See Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995) ("[A] party cannot avoid summary judgment by contradicting his own earlier testimony.").

5

result of Lindsey's October 27, 2004, assault on plaintiff. Plaintiff told several other staff members about the incident, but did not name Lindsey as the offending inmate.

On November 12, 2004, plaintiff was in line for lunch with other inmates in housing unit 6B. There was a discussion about one of the inmates making excessive noise in the unit earlier, and defendant Mitchell stated that it was probably plaintiff who made the noise.[5] Later, while plaintiff was standing in the food line, Lindsey pushed plaintiff with both hands. Plaintiff states that defendant Mitchell, who was standing some distance from the plaintiff and Lindsey, saw the push but did nothing. Plaintiff did not immediately report the push to defendant Mitchell or any other corrections officer, and plaintiff did not seek medical treatment for any injury sustained for being pushed. After plaintiff was pushed, he went to sit down and eat his lunch. After a short time, Lindsey walked over to plaintiff and punched plaintiff in the face. Plaintiff was taken for medical treatment, and eventually required surgery for his injuries.

Prior to November 12, 2004, plaintiff never requested to be moved from housing unit 6B, nor did plaintiff request to be segregated from Lindsey. There is no evidence in the record that, before the October 27, 2004, incident, Lindsey threatened or was

---

[5]The assertion that it was defendant Mitchell who accused plaintiff as the person making the noise belies plaintiff's earlier statement, written on November 12, 2004, which merely states that "someone" implicated plaintiff as the culprit. Doc. #55-16, p. 4.

6

otherwise a menace to plaintiff. Further, there is no evidence in the record that between the October 27, 2004, incident and the November 12, 2004, incident, Lindsey threatened or assaulted plaintiff, despite their co-habitation in housing unit 6B.[6]

On March 14, 2004, Officer Sue Weatherford observed a fight which included Lindsey. Weatherford had not had any problems with Lindsey before that day. On June 1, 2004, Officer Amy Vaughn observed a fight involving Lindsey. Vaughn had not had any problems with Lindsey before then, although she stated that she had heard rumors that Lindsey was aggressive. On the morning of November 12, 2004 (the day plaintiff alleges Lindsey punched him), defendant Mitchell asked Lindsey to retrieve another inmate, Joshua Hoth, from his cell. Defendant Mitchell opened Hoth's cell to allow Lindsey to enter, and Lindsey physically pulled Hoth out of the cell. Hoth reported the incident later that day, but after Lindsey had assaulted plaintiff.

On August 19, 1999, defendant Mitchell received a letter of reprimand. In 2002, defendant Mitchell was demoted and received a fifteen-day suspension. The parties have not cited any evidence of record detailing why defendant Mitchell received a letter of reprimand, a demotion, or a fifteen-day suspension.

**Discussion**

---

[6]In fact, plaintiff's November 12, 2004, statement indicates that soon after the October 27, 2004, incident, he explained the water situation to Lindsey, and they "both agreed shook hands and that was the end of that nothing was ever more said about it." Doc. #55-16, p. 4.

7

**Counts I, II, and IV - All Defendants**

Counts I, II, and IV assert claims against all defendants pursuant to 42 U.S.C. § 1983, and the Court's jurisdiction over the subject matter is based on the existence of such a cause of action. In order to state a claim under § 1983, plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States...." West v. Atkins, 487 U.S. 42, 48 (1988). Counts I, II, and IV, although stated separately as claims for violation of plaintiff's civil rights, for failure to protect plaintiff while in defendants' custody, and for failure to intervene and prevent the violation of plaintiff's civil rights, respectively, all three counts essentially state the same "failure to protect" claims, concerning the October 27 assault and the November 12 assults.

To succeed on an Eighth Amendment claim of failure to protect a prisoner from attack by a fellow inmate, a plaintiff must establish two elements. First, a plaintiff must establish "that the alleged constitutional deprivation was objectively, sufficiently serious," which requires a showing that the official's failure to protect "resulted in the inmate being incarcerated under conditions posing a substantial risk of serious harm." Young v. Selk, 508 F.3d 868, 872 (8th Cir. 2007) (quotations omitted). Second, a plaintiff must present evidence that the official "exhibited a sufficiently culpable state of mind, that is, [the official] must have been deliberately indifferent to a substantial

8

risk of serious harm to [plaintiff]." Id. at 873 (quotations omitted). The Eighth Circuit has clearly held that such a claim requires a showing of more than mere inadvertence or negligence and that liability on such a claim under § 1983 does not attach unless prison officials "actually intended to deprive [plaintiff] of some right, or...acted with reckless disregard of his right to be free from violent attacks by fellow inmates." Andrews v. Siegel, 929 F.2d 1326, 1330 (8th Cir. 1991) (quoting Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir. 1984)). Furthermore, "[t]o establish 'reckless disregard' by prison officials, an inmate must show that he was faced with a 'pervasive risk of harm' and that the prison officials failed to respond reasonably to that risk." Id. (citing Bailey v. Wood, 909 F.2d 1197, 199 (8th Cir. 1990)).

> [A] pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution....It is enough that violence and sexual assaults occur...with sufficient frequency that prisoners...are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures....

Id. (quoting Martin v. White, 742 F.2d 469, 474 (8th Cir. 1984)) (alterations in original). The Eighth Circuit applies these same standards to the claims of pretrial detainees such as plaintiff, which are analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. See, e.g., Wilkins v.

9

Davis, 963 F.2d 377 (8th Cir. 1992) (per curiam) (citing <u>Anderson v. Gutschenritter</u>, 836 F.2d 346, 349 (7th Cir. 1988)); <u>Thomas v. Booker</u>, 784 F.2d 299, 303 (8th Cir. 1986).

The Eighth Circuit has stated that "gratuitously allowing the beating...of one prisoner by another serves no legitimate penological objectiv[e]." <u>Irving v. Dormire</u>, 519 F.3d 441, 447 (8th Cir. 2008) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994)) (alterations in original). "The allegation that [the defendants] opened the cell doors so as to enable [another inmate] to attack [plaintiff] portrays unjustifiable, actionable inmate-endangering conduct." <u>Id.</u> Nevertheless, "prisons are dangerous places," and "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." <u>Jackson v. Everett</u>, 140 F.3d 1149, 1152 (8th Cir. 1998) (quotations omitted). In this case, with regard to plaintiff's claim as asserted in Counts I, II, and IV, the Court finds that plaintiff fails to demonstrate that any of the defendants had the requisite subjective state of mind. That is, plaintiff fails to show that he was faced with a <u>pervasive</u> risk of harm, and that defendants failed to reasonably respond to such a risk.

With regard to attacks by other inmates, defendants were not reasonably apprised of a pervasive risk to plaintiff's safety. Before the October 27, 2004, assault, Lindsey was involved in only

10

two violent altercations, neither of which involved plaintiff. Further, after the October 27, 2004, assault, plaintiff did not report or specifically complain about Lindsey. In fact, plaintiff <u>never</u> advised prison officials of the existence of a problem with Lindsey, nor did plaintiff assert any need for protective measures from Lindsey. Rather, the record and undisputed facts demonstrate that plaintiff consistently failed to express any concern about Lindsey's presence in housing unit 6B, and even did not name Lindsey as the inmate who assaulted him.

Further, even accepting plaintiff's claim that defendant Mitchell saw and knew of the October 27, 2004, assault, and the November 12, 2004, push, his failure to intervene does not present a constitutional violation. Indeed, both incidents were very short in time (lasting only a few seconds), and, if defendant Mitchell witnessed them, his failure to intervene can be explained by the fact that each incident had concluded before he could respond. In other words, plaintiff does not allege a prolonged beating that could have been broken up but was allowed to continue. Additionally, such isolated incidents (neither of which prompted plaintiff to seek medical attention) are not sufficient to reasonably apprise defendant Mitchell of the existence of an on-going threat to plaintiff's safety. This is especially true in light of plaintiff's own silence with regard to Lindsey.

Moreover, plaintiff's allegation that defendant Mitchell opened his cell so that Lindsey could hurt plaintiff is not

11

supported by the evidence. Rather, approximately thirty minutes passed between Lindsey's request for defendant Mitchell to open plaintiff's cell and plaintiff's cell being opened; plaintiff did not use the intercom to apprise defendant Mitchell of Lindsey's continued threats during those thirty minutes; and plaintiff does not dispute that his cell was opened so that it could be cleaned. Plaintiff's assertion that his cell was opened so that he could be assaulted is merely speculative, contradicts plaintiff's previous statement that he did not know why his cell was opened, and does not create a genuine issue of material fact. See Prosser, 70 F.3d at 1009 ("[Plaintiff's] uncertainty indicates that his assertion that [defendant] waited thirty seconds is mere speculation. As we have already stated, such speculation does not create a genuine issue of fact.").

Finally, in his complaint, plaintiff avers that defendants St. Louis County, Mueller, Stone, Szuba, Reed, Henderson, and John and Jane Does violated plaintiff's constitutional rights because they knew or should have known of defendant Mitchell's unconstitutional actions, and did nothing to correct or prevent them. However, because the Court finds that plaintiff has not created a genuine issue of material fact showing that defendant Mitchell violated plaintiff's constitutional rights, the Court cannot find the other defendants liable for their inaction with regard to defendant Mitchell's actions. See Sander v. Brewer, 972 F.2d 920, 923 (8th Cir. 1992) ("To hold supervisors

liable under section 1983, a plaintiff must show that a superior had actual knowledge that his [or her] subordinates caused deprivations of constitutional rights...."). Accordingly, all defendants will be granted summary judgment with respect to Counts I, II, and IV.

**Count V - Defendants St. Louis County, Mueller, Stone, Szuba, Reed, Henderson, and John and Jane Does**

Plaintiff, in Count V, asserts a claim of failure to instruct, supervise, control, and discipline officers against defendants St. Louis County, Mueller, Stone, Szuba, Reed, Henderson, and John and Jane Does. That is, plaintiff avers that there were numerous incidents where defendant Mitchell failed to follow official policy, custom, and practice, and that, despite knowing of Mitchell's inappropriate behavior, these defendants allowed such behavior to continue.

As an initial matter, the Court notes that defendants are sued in their official and individual capacities. Suits against officials in their individual capacity "'seek to impose personal liability upon a government official for actions he takes under color of state law.'" Clay v. Conlee, 815 F.2d 1164, 1169 (8th Cir. 1987) (quoting Kentucky v. Graham, 473 U.S. 159 (1985)). "To establish personal liability in a § 1983 action, the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right." Id. at 1169-70. In so far as defendants Mueller, Stone, Szuba, Reed, Henderson, and John and

13

Jane Does are sued in their official capacities, they are, for purposes of liability, treated as St. Louis County. See Graham, 473 U.S. at 166. As a municipality, St. Louis County can be held liable for the acts of its employees in contravention of the civil rights of individuals, but only upon a showing that a plaintiff's "constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.'" Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).

Municipal liability can stem from a policy officially adopted and promulgated by a municipality. While "municipal liability for violating constitutional rights may arise from a single act of a policy maker, that act must come from one in an authoritative policymaking position and represent the official policy of the municipality." McGautha v. Jackson County, Mo., 36 F.3d 53, 56 (8th Cir. 1994) (citations omitted). Accordingly, when considering an official's discretionary acts that are constrained by policies not of that official's making, "those policies, rather than the subordinate's departure from them, are the act of the municipality." Id. (emphasis added) (quotation omitted).

If a plaintiff cannot demonstrate a constitutional violation pursuant to an official policy, then it is incumbent on that plaintiff to produce evidence of a practice so permanent and

14

well-settled it can fairly be labeled an established custom. In other words, the evidence must demonstrate misconduct that is so pervasive among non-policymaking employees it is applied with the force of law. Id. A plaintiff can show an established custom by presenting evidence indicating:

>    (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
>    (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
>    (3) Th[e] plaintiff[']s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

Ware, 150 F.3d at 880. (alterations in original) (quoting Jane Doe A v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990)). While a single act or incident can establish liability pursuant to an official policy, "[l]iability for an unconstitutional custom...cannot arise from a single act." Id. at 882 (quoting McGautha, 36 F.3d at 57).

Plaintiff does not allege, nor argue, the existence of an official unconstitutional policy. In fact, plaintiff specifically acknowledges that defendants are governed by a myriad of policies intended to govern operations of the jail, and that defendants' brief highlights policies aimed at preventing threats, violence,

and unprofessional behavior, as well as policies aimed at protecting the constitutional rights of inmates. However, plaintiff argues: (1) that at least some aspects of defendant Mitchell's training and supervision were inadequate, and that defendants knew of these inadequacies; and (2) those individuals responsible for classification of inmates failed to properly classify Lindsey because he was allowed to stay in a direct housing unit.

With regard to defendant Mitchell's supervision and training, plaintiff fails to come forward with specific examples of a continuing, widespread, persistent pattern of unconstitutional misconduct by defendants. Further, plaintiff fails to demonstrate deliberate indifference to or tacit authorization of unconstitutional conduct by St. Louis County policymaking officials after notice to the officials of that misconduct. Rather, plaintiff generally states that "at least some aspects of defendant Mitchell's training and supervision were inadequate." To support this assertion, plaintiff points to defendant Mitchell's previous discipline for conduct violations and unprofessional behavior, and defendants' knowledge of such discipline. This accusation, while failing to create a genuine issue of material fact for trial, also demonstrates that defendants were <u>not</u> indifferent to and <u>did not</u> tacitly authorize defendant Mitchell's bad behavior. Rather, defendants' disciplining of defendant Mitchell demonstrates an attempt by defendants <u>to correct</u> defendant Mitchell's behavior.

16

Further, with regard to those responsible for Lindsey's classification, the Eighth Circuit has recognized that prisons are dangerous places, and that "not...every injury suffered by one prisoner at the hands of another...translates into constitutional liability for prison officials." Blades v. Schuetzle, 302 F.3d 801, 803 (8th Cir. 2002) (quoting Farmer, 511 U.S. at 834). Rather, "the duty to protect inmates requires that prison officials 'take reasonable measures to abate substantial risks of serious harm, of which the officials are aware.'" Id. (quoting Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995)).

In this case, plaintiff has adduced evidence that Lindsey was involved in two fights, and further states that defendants knew Lindsey was being held under charges of crimes involving violence (robbery and armed criminal action). However, neither of the fights involved plaintiff, and plaintiff did not advise anyone of his own troubles or concerns with Lindsey. Further, the Eighth Circuit has stated that "prisons 'are not required to segregate indefinitely all inmates whose original crimes suggest they might be capable of further violence.'" Id. at 803-04 (quoting Curry v. Crist, 226 F.3d 974, 978 (8th Cir. 2000)). Classifying Lindsey such that he remained in a direct housing unit with plaintiff does not constitute the level of deliberate indifference necessary to establish liability. Accordingly, the Court will grant defendants' motion for summary judgment as to Count V.

For the above stated reasons,

**IT IS HEREBY ORDERED** that defendant Emmett Mitchell's motion for summary judgment [Doc. #47] is granted.

**IT IS FURTHER ORDERED** that defendants St. Louis County, Michael Henderson, Cheryl Stone, Kenneth Reed, Roy Mueller, and John Szuba's motion for summary judgment [Doc. #55] is granted.

Dated this __2nd__ day of July, 2008.

>                                    /s/Donald J. Stohr
>                                    UNITED STATES DISTRICT JUDGE